[No. H022642. Sixth Dist. Jan. 7, 2002.]

In re MUHAMMED C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MUHAMMED C., Defendant and Appellant.

## COUNSEL

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, and Stan M. Helfman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—The juvenile court found appellant Muhammed C. to be a person described by Welfare and Institutions Code section 602 in that he resisted, delayed, or obstructed an officer (Pen. Code, § 148, subd. (a))[1] and committed an assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). On appeal, appellant contends that no substantial evidence supports the finding as to section 148, subdivision (a). We disagree and affirm the judgment.

[1]Further unspecified statutory references are to the Penal Code.

SCOPE OF REVIEW

■ Our review is governed by the same principles applicable to adult criminal appeals. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1].) Our function is "to determine whether the record contains any substantial evidence tending to support the finding of the trier of fact, and in considering this question we must view this evidence in the light most favorable to the finding." (*Id.* at p. 808.) Substantial evidence is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the appellant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The test is not whether guilt is established beyond a reasonable doubt, but whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560].)

BACKGROUND

Seaside Police Officer Terry Baggett had arrested Richard Robinson on drug charges and placed him in the back of a patrol car outside of Nations Market. The back window of the car was partially down. While Officer Baggett and other officers processed Robinson's car across the street, appellant approached the back of the patrol car and spoke to Robinson. Officer Chetinger ordered appellant to step away from the vehicle. Appellant continued talking to Robinson. Officer Baggett then ordered appellant away. Lieutenant Moningham also ordered appellant away. Appellant then extended his right hand out to the back, raising his palm towards the officers. Officer Baggett told appellant to step away from the patrol car or the officers would take him to jail. Officer Chetinger then began to cross the street and approach appellant. He again ordered appellant to step away from the patrol car. Appellant then walked toward Officer Chetinger. Officer Baggett joined the two and escorted appellant across the street. Lieutenant Lumpkin said something to appellant about breaking the law, appellant said some words in reply, and Lieutenant Lumpkin grabbed appellant's right arm and announced that appellant was under arrest. Appellant then pulled his arm out of Lieutenant Lumpkin's grasp. The officers reached out and grabbed appellant. Officer Baggett testified that he was processing Robinson's car, which contained contraband, and "had to stop and deal with [appellant]."

The juvenile court stated: "I'm also convinced that [appellant] did interfere or delay police officers in the performance of their duty. One officer had his uniform on. Mr. Robinson had been arrested, was placed in a marked patrol unit. His acts although not constituting the most egregious [section]

148 that I have ever seen did delay, resist or obstruct the officers in the performance of their duties."

DISCUSSION

"Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed . . ." is guilty of a misdemeanor. (§ 148, subd. (a).)

Appellant contends that his conduct did not rise to the level of delaying an officer because he did nothing to prevent the detention or arrest of Robinson. He asserts that he merely attempted to speak with Robinson and there is no evidence that he posed a safety threat to the officers or Robinson. He claims that section 148 punishes actual attacks on officers or a person's failure to cooperate when arrested. According to appellant: "The [person] must deliberately delay the officer and manifest the *actual intent* to prevent an officer's performance of their [*sic*] duty. The statute was not meant to make illegal behavior, which merely stops an officer and temporary [*sic*] diverts them [*sic*] from what they [*sic*] are doing. . . . Behavior that temporary [*sic*] distracts a police officer from the performance of their [*sic*] duty does not rise to the level of a criminal act." (Original italics.) Appellant adds that he is being punished for speaking to Robinson, a mere exercise of his constitutional right to free speech. We disagree with this analysis.

"The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations.]" (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109 [50 Cal.Rptr.2d 351].) The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence. (*People v. Roberts* (1982) 131 Cal.App.3d Supp. 1, 8-9 [182 Cal.Rptr. 757].)

Section 148 is most often applied to the physical acts of a defendant. (Cf. *In re Andre P.* (1991) 226 Cal.App.3d 1164, 1175 [277 Cal.Rptr. 363].) For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148. (*People v. Allen* (1980) 109 Cal.App.3d 981, 986-987 [167 Cal.Rptr. 502]; see *In re Gregory S.* (1980) 112 Cal.App.3d 764 [169 Cal.Rptr. 540].) But section 148 "is not limited to nonverbal conduct involving flight or forcible interference with an officer's

activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation." (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 968 [20 Cal.Rptr.2d 446].)

 Here, a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car: three officers ordered appellant five times to step away before appellant complied; they had interrupted processing Robinson's car to attend to appellant; and Officer Baggett specifically affirmed that the elapsed time had delayed the Robinson investigation.

It is true that "it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders." (*People v. Quiroga, supra,* 16 Cal.App.4th at p. 966.) But here, appellant acknowledged the officers' orders with his hand gesture yet continued his conversation with Robinson. Thus, there is no mere failure to respond here. Appellant affirmatively responded to the police orders with defiance. Though appellant has a benign interpretation of his hand gesture, the trial court was entitled to interpret the gesture as one of defiance and we must accept the interpretation in support of the trial court's finding. Similarly, appellant's point that he should not be criminally culpable for doing no more than temporarily distracting the officers from the performance of duties is simply an interpretation of the evidence. The trial court was entitled to conclude that appellant's defiant behavior constituted more than a temporary distraction. That appellant did not pose a safety threat or a threatened interference with the officers' investigation, as appellant urges, is simply circumstantial evidence from which appellant could argue that he did not delay the officers.

Appellant's free speech point is patently without merit.

 Although section 148 proscribes resisting, delaying, or obstructing a police officer, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." (*Houston v. Hill* (1987) 482 U.S. 451, 461 [107 S.Ct. 2502, 2509, 96 L.Ed.2d 398].) In fact, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." (*Id.* at pp. 462-463 [107 S.Ct. at p. 2510]; see also *People v. Quiroga, supra,* 16 Cal.App.4th at p. 966.) Even though the police may dislike being the object of abusive language, they are not allowed to use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the

First Amendment. (*Duran v. City of Douglas, Ariz.* (9th Cir. 1990) 904 F.2d 1372, 1378.) For this reason, section 148 must be applied with great care to speech. (*People v. Quiroga, supra,* 16 Cal.App.4th at p. 968.) Although fighting words or disorderly conduct may lie outside the protection of the First Amendment, the areas of unprotected speech are very narrow. (*Ibid.*)

 Appellant cites no authority for the proposition that his verbal conduct in this case (speaking to a detained suspected criminal in police custody when ordered to stop) is akin to a mere verbal challenge to police officers.

We conclude there was substantial evidence in the record to support the juvenile court's determination that appellant "willfully . . . delay[ed]" the officers in the discharge of their duties. (§ 148, subd. (a).) And it follows that the officers lawfully arrested appellant for violating section 148, subdivision (a).[2]

### DISPOSITION

The judgment of wardship is affirmed.

Elia, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 27, 2002. Chin, J., did not participate therein.

---

[2]Appellant secondarily contends that his resistance to the arrest cannot constitute the violation of section 148 because, absent an initial violation of section 148, the arrest was unlawful. The contention necessarily fails.