Filed 10/31/14  P. v. Lewis CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B253046 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA099938) |
| v. | |
| JAMES LEMUEL LEWIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed in part and reversed in part.

Myra Sun, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Jessica C. Owen, Deputy Attorney General, for Plaintiff and Respondent.

_____

James Lemuel Lewis appeals his convictions for auto burglary and obstructing a peace officer, arguing that the evidence was insufficient. We reverse his conviction for auto burglary.

## BACKGROUND

A third amended information charged Lewis with eight counts, including those in issue on this appeal: count 4, second degree burglary of a vehicle, in violation of Penal Code section 459;[1] and count 6, obstructing or delaying a police officer, in violation of section 148, subdivision (a)(1). A jury found Lewis guilty on those and four other counts, and the trial court sentenced Lewis to a total term of seven years and four months in state prison.

At trial, Arcadia Police Officer Zachary Schumaker testified that he was on duty early in the morning of June 19, 2012. A resident told him that he had heard glass shatter and there may have been a car burglary in the area. Officer Schumaker made a traffic stop of Lewis's truck, which left a nearby driveway and drove off, going 65 miles per hour in a 45 miles per hour zone. A search of Lewis's person and of the truck turned up flashlights, a lockpicker, burglary tools, a crowbar, gloves, screwdrivers, pliers, and a wire cutter, "and what I believe to be stolen property." Also found under the passenger seat were shaved keys, which are used to access locks on older model vehicles. Officer Schumaker arrested Lewis for suspected vehicle burglary, but the police were unable to confirm that there had been a car burglary.

Alfredo Avila testified that on October 1, 2012, he lived in El Monte. Asked by the prosecutor whether he remembered calling the police on that date "and telling them that [his] car had been broken into?," he answered, yes. Asked, "[A]nd do you remember how they broke into that car?," Avila answered, "I didn't see. So I wouldn't know." Outside the presence of the jury, the prosecutor told the trial court that he wanted to show Avila the part of the police report that read, "'Victim left his vehicle front driver's side window partially open and that's how entry was made,'" and the court allowed it. The

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

prosecutor then asked Avila to read the section of the police report to himself to refresh his recollection, but after reading it Avila asked for a translator because his primary language was Spanish.

When his testimony resumed, Avila had read the police report with the help of an interpreter (who was helping with his testimony), and now remembered the incident. The car stereo, speakers, amplifier, and radio had been taken. He "didn't tell [the officer] how the car was broken into," just that he had left the car with at least one of the windows cracked open, although it might have been all four windows. Avila could not remember if any windows were broken. He no longer had the car, but he thought it was a four-door. He had had four different cars broken into in the past, which was why he couldn't remember.

El Monte Police Department Officer Daniel Jauregui testified that on the morning of October 1, 2012, he was dispatched to investigate the alleged burglary. He examined the front driver's side window of the four-door car "because that appeared to be the point of entry for the burglary," based on Avila's statement. He also examined the front passenger window and the rear view mirror. He was able to lift fingerprints from the front driver's side window, and a fingerprint expert testified that prints found on the inside of the window matched Lewis's.

Officer Doug Knight testified that around 8:00 a.m. on November 1, 2012,[2] he went with a team of around 29 officers to execute a search warrant at Lewis's house on Gilman Street in El Monte. Using a public address system from one of the police units, the team made at least 10-20 announcements ordering the occupants, as well as Lewis, to exit the residence. Four adults came out of the house. Officer Knight and the other officers entered the house to search, first checking to make sure no one else was inside. The officers found no one. The officers then used mirrors to see if anyone was hiding in the attic. When they did not see anyone, they used a police dog. Officer Knight saw the

---

[2] On direct examination, the prosecutor asked Officer Knight about a search on October 1, 2012 (the date of the charged auto burglary), but the record reflects that the search occurred on November 1, 2012.

dog enter the attic and then heard a struggle (which he thought meant that the dog was biting), and Lewis came out of the attic. Officer Knight searched Lewis and found more than 10 keys in Lewis's front pants pockets, with the bases wrapped in electrical tape. Officer Knight took Lewis outside and handed him off to other officers so Lewis could get medical attention for a dog bite.

Officer Peter Rasic was the lead detective, and responded from a nearby command post to the Gilman Street address after the house was secured. He found nine car stereos in the garage, which were booked into evidence. He also seized power tools and a number of identification documents such as passports, bearing various names other than Lewis's. The next day, November 2, Officer Rasic interviewed Lewis after advising him of his *Miranda*[3] rights. Lewis told Officer Rasic that the keys were homemade, and he was being taught how to make them by a neighbor; he knew these types of keys were used to break into vehicles. Some of the keys were "shaved keys," meaning their edges had been ground to gain access into vehicles. He told Officer Rasic that the documents had been brought over by a neighbor, who obtained them through auto burglaries. Sometimes he drove the neighbor to commit auto burglaries, but never participated in breaking into the vehicles. His neighbor would sell the identification documents. Told that his fingerprints were found in Avila's car, Lewis claimed to have no recollection. Lewis had heard the police announcements and thought they were looking for his neighbor, but he was scared and hid in the attic.

The jury found Lewis guilty of second degree burglary of a vehicle and of obstructing or delaying a police officer, along with four other counts.

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

DISCUSSION

Lewis argues there was not substantial evidence to support his convictions for auto burglary and for obstructing or delaying a police officer.

**There was insufficient evidence of auto burglary.**

Section 459 provides:  "Every person who enters any . . . vehicle as defined by the Vehicle Code, when the doors are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  Under section 459, "[a]uto burglary can be committed only by entering a locked vehicle without the owner's consent."  (*People v. Allen* (2001) 86 Cal.App.4th 909, 914.)  To determine whether the requirements of section 459 have been met, we apply a "liberal and commonsense approach."  (*Id.* at p. 915.)  To determine whether substantial evidence supported the jury's guilty verdict, we determine whether there is "evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]"  (*People v. Stanley* (1995) 10 Cal.4th 764, 792.)

There was no evidence that Avila's car was locked.  Avila did not testify that he locked the car, stating only that he had "cracked" open one, or all, of the windows, and he could not remember whether any windows were broken.  (At the preliminary hearing, Avila testified that he had locked the car when he last saw it before the robbery, but this was not placed before the jury.) Officer Jauregui testified that he "examined the front driver's side window area because that appeared to be the point of entry for the burglary," which he based on Avila's statement, not on a physical examination of the car.  Lewis's fingerprints matched prints lifted from the inside of the front driver's side window, but that told the jury nothing about whether the car had been locked before the prints were made.

Cases finding sufficient evidence of entry into a locked vehicle require more.  In *People v. Blalock* (1971) 20 Cal.App.3d 1078, 1081–1082, the victim testified that she believed she locked the car and that the trunk, from which the items were taken, was locked and could be opened only with a screwdriver.  In *In re Charles G.* (1979) 95 Cal.App.3d 62, 66, the victim testified that to the best of his knowledge he had left the

5

car locked, as he always did. In *In re James B.* (2003) 109 Cal.App.4th 862, 866, 871, the victim parked his car, locked the doors, and opened two windows by one inch and three inches for ventilation. In contrast, where a police officer as part of a "decoy operation" locked the car doors and left a passenger window rolled down five and one-half inches to avoid damage to the car, that the car was locked was not enough; "[W]here the entry occurs through a window deliberately left open, some evidence of forced entry [is required] before the prosecutor's burden of proof is satisfied." (*People v. Woods* (1980) 112 Cal.App.3d 226, 228, 230.) Conversely, "where a defendant 'used no pressure,' 'broke no seal,' *and* 'disengaged no mechanism that could reasonably be called a lock,' he is not guilty of auto burglary. . . . (*In re Young K.* (1996) 49 Cal.App.4th 861, 864.) [T]he purpose of section 459 is to 'make it a more serious crime *to break into the interior* of a car.'" (*People v. Toomes* (1957) 148 Cal.App.2d 465, 467.) The prosecutor's and Avila's use of the phrase "broken into" is not evidence that Avila's car was locked. There was no evidence of damage to the car or even of forced entry, and even if there were, evidence of forced entry such as broken glass is not enough; the evidence must also show that the car was locked. (*People v. Burns* (1952) 114 Cal.App.2d 566, 570.) Although Lewis was found to be in possession of many tools for entry into a locked vehicle in June 2012 and November 2013 and items like those removed from Avila's car were found in the search of his residence, there was no evidence that Avila's car was locked during the incident Avila reported on October 1, 2013.

The jury was properly instructed that the car must be locked. The prosecutor, in closing, acknowledged, "I'm not quite sure it's there," referring to evidence of the locked requirement, and continued: "Even if the victim, Mr. Avila, doesn't say the car was locked, Right, I would ask you to use your common sense. He's had four other cars stolen. He's not going to usually leave his car unlocked. That may or may not satisfy you as a jury. That's your prerogative. You get to decide that." The defense argued: "[W]as the car locked? No evidence to support that, right?" During deliberations, the jury sent a note asking: "Does it matter if the vehicle was locked or unlocked? Would it

6

be a crime if someone entered an unlocked car?," and the court responded that the burglary charge "requires proof that the doors of the car be locked. If the doors are not locked, the crime of burglary is not committed." The jury also requested and received a readback of Officer Jauregui's testimony. The jury therefore was aware of the issue, but we cannot uphold its resolution. Even construing the evidence in favor of the verdict, there was insufficient evidence that the car was locked to support the finding that Lewis violated the burglary statute, section 459.

**Sufficient evidence of obstruction or delay of a police officer**

As amended during trial, the information alleged that on November 1, 2012 (the date of the search), Lewis committed the misdemeanor of resisting, obstructing, or delaying a police officer, in violation of section 148, subdivision (a)(1), by obstructing and delaying Officer Doug Knight. Section 148, subdivision (a)(1), provides that a person who "resists, delays, or obstructs" a police officer "in the discharge or attempt to discharge any duty of his or her office or employment" shall be punished by a fine or by imprisonment not to exceed a year. Lewis argues that there is no evidence that he knew he had to leave the house because the officers were executing a search warrant.

A violation of section 148, subdivision (a)(1) requires "'"(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.'"'" (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894–895.) While the statute does not "criminalize[] a person's failure to respond with alacrity to police orders," (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 966), "physical resistance, hiding, or running away from a police officer have been found to violate section 148." (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.) Evidence of willful resistance and failure to comply with orders also supports a violation of section 148. (*In re J.C.* (2014) 228 Cal.App.4th 1394, 1400.) A "[d]efendant cannot be convicted of an offense against an officer engaged in the performance of official duties unless the officer was acting lawfully at the time." (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1109.)

7

Here, the evidence at trial was that Officer Knight and many other officers went to the Gilman Street address, and made at least 10–20 announcements on a police unit public address system asking the occupants and Lewis to leave the house. Four people exited, but Lewis failed to comply. The officers checked the house to clear it, and then checked the attic, using mirrors and finally a police dog, who found and bit Lewis, who then emerged. This is not a mere failure to respond "with alacrity" but a failure to comply with repeated orders and a prolonged concealment from Officer Knight and the other officers, supporting a conclusion that Lewis delayed and obstructed the officers in the discharge of their official duty.

Lewis argues that there was insufficient evidence that he knew he had to come out because the police were executing a search warrant rather than some other official duty. There was evidence at trial that the officers had a warrant and intended to search the premises, and the trial court included in its instruction that official duties included a search authorized by a search warrant and that the prosecution alleged that Lewis delayed or obstructed the search. And contrary to Lewis's contention, the instruction given to the jury did not require a finding that "Lewis hid in the house with the knowledge that *a search warrant was going to be executed.*" The instruction gave the jury the elements to prove a violation of section 148, subdivision (a), which included that Lewis "knew, or reasonably should have known, that [Officer] Knight was a police officer performing or attempting to perform his duties." (See *Yount v. City of Sacramento*, *supra*, 43 Cal.4th at pp. 894–895.) The instruction also stated, "The duties of a peace officer include searching a location that is authorized by a search warrant," and explained that the prosecution alleged that Lewis violated the statute by "delaying or obstructing the officer's search of the premises authorized by the search warrant." Neither the statute nor the instruction imposes an additional requirement that the jury find that Lewis knew that Officer Knight was a police officer performing or attempting to perform *a search pursuant to a warrant*. The statute does not impose a requirement that the defendant know the details of the particular official duty the police are performing at the time he delays or obstructs the officers. Certainly Lewis should reasonably have known that

8

Officer Knight and the others were engaged in performing official duties when they broadcasted repeated announcements to leave the house. A reasonable inference could be drawn from the evidence that Lewis "willfully delayed the officers' performance of duties" by refusing to comply with the repeated requests that he exit the building and, instead, hiding in the attic until found by a police dog. (*In re Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1330.)

Sufficient evidence supports Lewis's conviction of a violation of section 148, subdivision (a)(1).

**The out-on-bail enhancement is stayed.**

Lewis argues, and respondent agrees, that the two-year enhancement of his sentence for being out on bail when he committed the offenses in this case must be stayed until he has been convicted of the offense for which he was out on bail (the "primary offense"), pursuant to section 12022.1, subdivision (d). (*People v. Meloney* (2003) 30 Cal.4th 1145, 1149.) The record does not reflect whether Lewis was convicted of the primary offense. On remand, the trial court must determine the status of the primary offense, which affects whether the enhancement should be stayed or imposed. (*Id.* at p. 1164.)

## DISPOSITION

The conviction on count 4 is reversed. Upon resentencing, the trial court shall determine whether to stay or impose the enhancement under Penal Code section 12022.1, subdivision (d). The trial court shall amend the abstract of judgment accordingly, and forward the amended abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.