Filed 2/27/13  In re Alec R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ALEC R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F065121 |
| Plaintiff and Respondent, | (Super. Ct. No. JJD065191) |
| v. | |
| ALEC R., | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Kane, J. and Franson, J.

The court readjudged appellant, Alec R., a ward of the court after it sustained allegations in a subsequent juvenile wardship petition charging him with conspiracy to shoot at an inhabited dwelling (count 2/Pen. Code, §§ 182, subd. (a)(1) & 246) and resisting arrest (count 3/Pen. Code, § 148, subd. (a)(1)). On appeal, appellant contends the court erred when it denied his motion to dismiss these two offenses. We find merit to this contention with respect to the conspiracy charge. In all other respects, we affirm.

## FACTS

On March 13, 2012, the Tulare County District Attorney filed a juvenile wardship petition charging appellant with shooting at an inhabited dwelling (count 1/Pen. Code, § 246), conspiracy to shoot at an inhabited dwelling (count 2), and resisting arrest (count 3).

The evidence at appellant's jurisdictional hearing established that at around midnight on March 9, 2012, someone fired at least two rounds from a shotgun at Chanou See's house on North Bridge Street in Visalia, damaging the front door and breaking a bedroom window.

Ernie Ramirez testified that he arrived home from work just prior to the shooting. As he drove up to his house, which was located in a cul-de-sac named East Parker Court, Ramirez saw two people just north of See's residence standing at the northeast corner of East Parker Court and North Bridge Street. The subjects were dressed in black hoods and black pants and Ramirez could not see their faces. Five seconds after entering his house, Ramirez heard two shots. He looked out a window and saw the two subjects standing about 10 feet away from See's house and then running east down East Parker Court, past a barricade, and into an open area where some abandoned railroad tracks were located. Ramirez noticed one of them appeared to be holding something in his hand.

Ramirez's mother was also in the house at the time. After hearing two gunshots, she looked out a bedroom window and saw two people wearing black or dark blue hoods running east down East Parker Court towards the open area.

2

Visalia Police Officer Kevin Grant testified he was on patrol when he heard dispatch report that two subjects wearing dark clothing were running eastbound from a residence that had just been shot at. After parking his patrol car on Houston Avenue, south of the location where the two subjects had been seen running, Officer Grant got out and began walking north toward the open area. He then saw three subjects in black clothing running directly toward him. When the subjects were about 40 yards away from the officer, they stopped, turned around, and began running in the opposite direction. Officer Grant immediately identified himself as a police officer and ordered them to stop.

One subject continued running north and then east over a fence and into to a residential backyard. Officer Grant pursued the two other subjects, who ran in a northwestern direction through an apartment complex carport and onto a cul-de-sac named East Sweet Court. One subject gave up and lay on the ground with his hands behind his back but the other subject kept running. Within a minute of taking the subject on the ground into custody, Officer Grant heard that Officer Brown had apprehended another subject.

Officer Grant believed the subject who gave up may have been carrying something because prior to running through the carport the subject was using only one hand to run and his other hand appeared to be "stuck to his front." After the subject came out of the carport, he ran at a full sprint and used both hands. When Officer Grant searched the subject, he found a spent round of Federal Brand .20 gauge birdshot in one of his pockets. Officer Grant then retraced the route that he had chased the subjects and found a sawed off shotgun under a parked vehicle.

Officer Curtis Brown testified he responded to the area after hearing dispatch report the subjects were last seen running into the open area where the abandoned railroads tracks were located. Ten seconds after Officer Grant reported he was in pursuit of two subjects, Officer Brown saw a subject, later identified as appellant, running southbound off of North Bridge Street, across Houston Avenue, directly in front of his

3

patrol vehicle, and into an open field. Officer Brown activated the overhead emergency lights on his patrol car and followed appellant into the field where Officer Brown exited his vehicle and ordered appellant to get on the ground. Appellant hesitated but by that time Officer Brown had reached him, and with his gun drawn, pushed appellant to the ground. At that point, appellant complied with the officer's commands and was taken into custody.

Officer Ricardo Loza testified he interviewed appellant at the police station. According to appellant, earlier he had been walking on the north side of Houston Avenue, in the area of Houston Avenue and Northeast Fourth Avenue, when he heard two shotgun blasts and ran southbound toward an apartment complex on the east side of Northeast Fourth Avenue. Appellant had been headed to a party at a large water tower that was located about a quarter mile south of Houston Avenue. Appellant denied firing a weapon.

Officer Julie Moore testified that after hearing a dispatch about the shooting, she drove up Northeast Fourth Avenue towards Houston Avenue. On the way to See's residence, she saw a Hispanic juvenile run down North Bridge Street, across Houston Avenue, and into a dirt field.

At the conclusion of the prosecution's case, the defense moved to dismiss all three counts. The court granted the defense motion to dismiss as to count 1, but denied it as to counts 2 and 3. In denying the defense motion to dismiss the resisting arrest count, the court found appellant resisted Officer Grant when he failed to obey the officer's commands to stop.

## DISCUSSION

Appellant contends the court erred when it denied his motion to dismiss as to counts 2 and 3 because the prosecutor presented insufficient evidence that appellant conspired with anyone to shoot at See's residence or that he was one of the three people who fled from Officer Grant. We will find the evidence sufficient to support the court

4

finding appellant resisted arrest but insufficient to sustain its finding that he committed conspiracy to shoot at an inhabited dwelling.

> "Welfare and Institutions Code section 701.1 is substantially similar to Penal Code section 1118.[1]  We conclude, therefore, that in enacting section 701.1, the Legislature intended the rules and procedures applicable to section 1118 to apply with equal force to juvenile proceedings. [Citation.]  Consequently, the standard for review of the juvenile court's denial of a motion to dismiss is whether there is substantial evidence to support the offense charged in the petition.  [Citation.]  In applying the substantial evidence rule, we must 'assume in favor of [the court's] order the existence of every fact from which the [court] could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense. [Citations.]  Accordingly, we may not set aside the trial court's denial of the motion on the ground of the insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below.' [Citations.]" (*In re Man J.* (1983) 149 Cal.App.3d 475, 482.)

The legal elements of the offense of resisting, delaying, or obstructing a police officer are that the defendant willfully resisted, delayed, or obstructed a police officer when the officer was engaged in the performance of his or her duties, and the defendant knew or reasonably should have known that the other person was a police officer engaged in the performance of his or her duties.  (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)

Here, at around midnight on March 9, 2012, three people were seen by Officer Grant running toward him in an open area where two people had been seen fleeing to

---

[1]     "Penal Code section 1118 provides:  'In a case tried by the court without a jury, a jury having been waived, the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right.'"

after one of them fired two shotgun blasts at the See residence.  Upon seeing Officer Grant, the three subjects began running and Grant pursued two of them.  Ten to 15 seconds later, Officer Brown saw appellant running down North Bridge Street and across Houston Avenue about a block and a half away from the location where Officer Grant detained one suspect.  Further, appellant's claim that prior to being arrested he had been walking on the north side of Houston Avenue in the area of Northeast Fourth Avenue and Houston Avenue when he heard gunshots was contradicted by Officers Moore and Brown, who saw him running south on North Bridge Street.  The court could reasonably have found from these circumstances that appellant was one of the three suspects who disobeyed Officer Grant's order to stop and who eluded him after running on to East Sweet Court.  However, this evidence does not support the court's adjudication of appellant for conspiracy.

> "Conspiracy is an inchoate crime.  [Citation.]  It does not require the commission of the substantive offense that is the object of the conspiracy.  [Citation.]  'As an inchoate crime, conspiracy fixes the point of legal intervention at [the time of] agreement to commit a crime,' and 'thus reaches further back into preparatory conduct than attempt....'  [Citation.]

> "The crime of conspiracy is defined in the Penal Code as 'two or more persons conspir[ing]' '[t]o commit any crime,' together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance thereof.  [Citation.]  'Conspiracy is a "specific intent" crime....  The specific intent required divides logically into two elements:  (a) the intent to agree, or conspire, and (b) the intent to commit the offense which is the object of the conspiracy....  To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree *but also that they intended to commit the elements of that offense.'*  [Citation.]  In some instances, the object of the conspiracy 'is defined in terms of proscribed conduct.'  [Citation.]  In other instances, it 'is defined in terms of ... a proscribed result under specified attendant circumstances.'  [Citation.]"  (*People v. Swain* (1996) 12 Cal.4th 593, 599-600.)

The evidence here showed that just before midnight on March 9, 2012, two suspects in dark clothing approached the See residence and fired two to three shots at the

6

house, hitting the front door and breaking a bedroom window. However, the prosecution did not present any evidence from which the trial court could reasonably infer that appellant was one of the two suspects or that prior to the shooting appellant agreed with either or both of the suspects that one of them would discharge a shotgun at the residence.

Respondent cites appellant's apprehension near the scene of the shooting within a minute and half after three subjects ran from Officer Grant and his statement to Officer Loza, which the court could have found was false, as evidence that supports the conspiracy charge.[2] However, although appellant was arrested near the site of the shooting soon after it happened, the evidence failed to establish that he was one of the two suspects who actually participated in the shooting. At most it shows only that appellant accompanied the actual perpetrators after the shooting and probably before. Additionally, appellant could have accompanied the actual perpetrators prior to the shooting without knowing that they intended to shoot at the See residence or knowing of their intent, but not sharing it. Further, respondent does not explain why it can, nevertheless, be reasonably inferred from the circumstances it cites that appellant agreed with one or both of the other suspects to shoot at the See residence. Accordingly, we find the evidence insufficient to support the court's adjudication of appellant for conspiracy to shoot at an inhabited dwelling.

### DISPOSITION

The juvenile court's true finding with respect to charge of conspiracy to shoot at an inhabited dwelling is reversed and its disposition order is vacated. Additionally, the

---

**2** Respondent also contends that appellant matched the description of the three individuals that ran from Officer Grant. None of the witnesses testified regarding what appellant was wearing when he was arrested. However, since it can reasonably be inferred that appellant was one the suspects who ran from Officer Grant and appellant was apprehended a short time later, it can also reasonably be inferred that appellant was still wearing the black clothing that Officer Grant saw the three suspects wearing.

7

matter is remanded to the juvenile court for a new disposition hearing.  In all other respects the judgment is affirmed.