Filed 7/7/16  P. v. Huggins CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JERITZEL HUGGINS,<br><br>    Defendant and Appellant. | 2d Crim. No. B263818<br>(Super. Ct. No. 2014032761)<br>(Ventura County) |

Jeritzel Huggins appeals a judgment following his conviction of attempted grand theft of an automobile (Pen. Code, §§ 664, 487, subd. (d)(1)[1] (count 1); attempted unlawful driving a vehicle (§ 664; Veh. Code, § 10851, subd. (a)) (count 2); and resisting, obstructing or delaying a peace officer (§ 148, subd. (a)(1)) (count 3).  We conclude, among other things, that substantial evidence supports the judgment on all three counts and that the trial court properly instructed the jury on the misdemeanor offense in section 499b.  We affirm.

### FACTS

Nicole Albillar arrived at work and locked her Lexus automobile.  Huggins broke into that vehicle.  He removed the panel under the steering wheel.  The car alarm went off.  Albillar heard the alarm.  She went to the vehicle and told Huggins to get out

---

[1] All statutory references are to the Penal Code unless otherwise stated.

of her car. He responded, "I need your car. It's an emergency." Albillar had never seen Huggins before. She began yelling and screaming. Huggins got out of the car. Albillar got into her vehicle and closed the door. Huggins went to the passenger door of the vehicle and tried to open it. He was unable to get in. He told her, "You're gonna take me somewhere."

Another man drove up in a Volvo. Huggins got in that car "nonchalantly" and told the driver, "[W]e got to get outta here." As they drove off, Albillar saw the license plate of the Volvo and called the police.

Police Officer Jared Battles saw the Volvo. He "activated [his] overhead red lights" and stopped the vehicle. Huggins disobeyed Battles's repeated commands that he place his hands on the dashboard. Huggins placed his hands on his lap. Battles reached into the car to see whether Huggins was holding a weapon. Huggins grabbed Battles and tried to pull him into the car. Battles pulled himself free from Huggins and made three commands that he lie on the ground. Huggins did not comply. Battles had to use his Taser to make Huggins comply with his commands.

After his arrest, Huggins told Battles in a recorded conversation that he understood the command to put his hands on the dashboard. When asked why he did not comply, Huggins said, "I'm trying to figure out why I did that. And I shoulda did that. You're right."

In the defense case Jeffrey Lundquist testified he was the driver of the Volvo. While he was driving to go to a medical appointment, Huggins opened the door of his car, "jumped in," and said "I need help." It appeared to Lundquist that Huggins was not going to get out of his car. Huggins "was kinda . . . incoherent." Lundquist had used drugs for approximately 30 years. He believed Huggins "was loaded on something like a controlled substance." He said he did not know if Huggins "had consumed any drugs that day" or if he "had any mental illness." When the police stopped his car, Huggins said, "Jesus Christ. I'm with the spirits." He also told the police officers, "Why are you hassling me? I haven't done anything."

2

DISCUSSION

*Substantial Evidence - Counts 1 and 2*

Huggins contends there is no substantial evidence to support his convictions for attempted grand theft of an automobile (§§ 664, 487, subd. (d)(1)), (count 1) and attempted unlawful driving of a vehicle (§ 664, Veh. Code, § 10851, subd. (a)), (count 2). He claims that "the prosecution presented insufficient evidence that [he] possessed the requisite intent to commit either grand theft auto or attempted taking of a vehicle." (Capitalization omitted.) We disagree.

In reviewing the sufficiency of the evidence, we must draw all reasonable inferences in support of the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not decide the credibility of the witnesses and we do not weigh the evidence. (*Ibid.*; *People v. Martinez* (2003) 113 Cal.App.4th 400, 412.)

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.)

"*[A]ttempted grand theft auto* is a direct but ineffectual act toward the taking or driving away of an automobile with the specific intent to *permanently* deprive the victim of possession of [his or] her car." (*People v. Marquez* (2007) 152 Cal.App.4th 1064, 1067.)

An attempt to take a vehicle under Vehicle Code section 10851, subdivision (a) requires proof of "a direct but ineffectual act" (§ 21a) toward driving or taking "a vehicle belonging to another person, without the owner's consent," with the defendant's "specific intent to permanently or temporarily deprive the owner of title or possession" (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574).

Huggins claims the prosecution did not present evidence on counts 1 or 2 to show that he had such a specific intent. He cites evidence in the record, which he claims supports his position that he was intoxicated and that his only intent was "to leave his present location."

3

The issue, however, is not whether some evidence supports Huggins's position; it is only whether substantial evidence supports the judgment. We do not weigh the evidence. The trier of fact resolves the conflicting inferences from the testimony. (*People v. Yeoman* (2003) 31 Cal.4th 93, 128.)

" '[I]ntent is inherently difficult to prove by direct evidence. Therefore, the act itself, together with its surrounding circumstances must generally form the basis from which the intent of the actor may legitimately be inferred.' " (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1099.)

Here the jury could reasonably infer Huggins had the intent to take the car. Albillar locked her car. Huggins broke into that vehicle. He went inside the car and removed the panel under the steering wheel. Albillar told Huggins to "get out of [her] car." He responded, "I need your car." Albillar yelled and screamed. Huggins got out of the vehicle. Albillar got in and closed the door. Huggins then went "around the front of the car to the passenger door and trie[d] to open it and get in." He left after he was unable to get back into that vehicle.

Huggins suggests his statements and acts show he did not know he was attempting to commit a car theft. But the jury could reasonably reject this claim. The manner of his entry into the locked vehicle and his removal of the panel under the steering wheel support the jury's verdict. Albillar testified Huggins was "slouched over" in the driver's seat underneath the steering column. He was "doin' something under the steering wheel." Jurors could reasonably infer that is the area where a car thief would attempt to "hot wire" the ignition to start the car without a key.

The trial court instructed jurors that they could consider evidence of voluntary intoxication of a "drug, drink or other substance" in deciding whether Huggins "acted with specific intent." (*People v. Reyes* (1997) 52 Cal.App.4th 975, 982.) Huggins's counsel told the jury that Huggins did not have the specific intent to commit the offenses because "he was out of his mind, whether it's drugs, a mental breakdown, something." The jurors, however, could reasonably infer Huggins's statement to

4

Lundquist that "we got to get outta here" showed his consciousness of guilt. Albillar testified that she believed Huggins was moving his hands in the car to try to shut off the car alarm. She said that after she confronted him he was looking around to see if other people were going to come there to help her. His statement "I need your car" was evidence of his intent to take the vehicle and his actions were consistent with that intent.

The jury also could find that Huggins's conversation with Battles undermined the defense claim that Huggins was "out of his mind." Huggins admitted he understood Battles's commands and that he should have complied with them. He explained that he was "homeless" and "not eating." He "needed help." Battles testified that during questioning Huggins "look[ed] directly" at him; Huggins responded to the questions and Battles understood what Huggins was saying.

Lundquist admitted he did not know whether Huggins had used drugs that day or if Huggins had any mental illness. He was not a medical expert. The credibility of his assessment was a matter for the triers of fact. The jury resolved any conflict in the evidence about intent against Huggins. We may not reweigh the weight, credibility and conflicts in the evidence. There is substantial evidence in the record. (*People v. Edwards*, *supra*, 8 Cal.App.4th at p. 1099.)

*Substantial Evidence - Obstructing or Resisting a Peace Officer (Count 3)*

Huggins contends "the evidence was insufficient to show that [he] willfully resisted a peace officer." We disagree.

" 'The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.' " (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.) "The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence." (*Ibid.*)

5

Battles activated his overhead lights and stopped Lundquist's car. He drew his firearm and ordered passenger Huggins to put his hands on the dashboard. Huggins did not comply. Instead, he put his hands on his lap. Battles gave a second command. Huggins again did not comply. Battles reached into the car to grab Huggins's wrists so he could see whether Huggins had something in his hands such as a weapon. Huggins grabbed Battles and tried to pull him into the car. Battles had to use his "whole body" to "pull [his] arm out to release [Huggins's] grip" and "pull free." Battles next gave Huggins three commands to lie on the ground. Huggins did not comply. Battles had to use his Taser to force him to comply.

In a recorded conversation, Battles asked Huggins why he did not comply with his command that he place his hands on the dashboard. Battles asked, "[D]id you understand that?" Huggins replied, "Yes, I did." Battles asked, "[S]o why . . . did you refuse to do that?" Huggins said, "I wanted [to] think about it . . . . I'm trying to figure out why I did that. And I shoulda did that. You're right." Consequently, Huggins understood the officer's commands, deliberately violated them, resisted, and physically obstructed the officer by pulling him into the car. The evidence is sufficient. (*In re Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329.)

*Failure to Instruct the Jury on Section 499b*

Huggins contends the trial court erred by not instructing the jury on the lesser included offense of section 499b for counts 1 and 2.

The People contend the trial court did not err. They claim that section 499b is not a lesser included offense of the crimes in counts 1 and 2 and that it is not relevant to the facts of this case. We agree.

Section 499b makes it a crime to use or operate "any bicycle" or "any vessel" without the permission of the owner. (§ 499b, subds. (a) & (b); *People v. Howard* (1997) 57 Cal.App.4th 323, 326, fn. 2.) Huggins attempted to take an automobile, not a bicycle or a vessel. Huggins's argument is based on an earlier version of this statute which is no longer applicable. (*Howard*, at p. 326, fn. 2.)

6

We have reviewed Huggins's remaining contentions and conclude he has not shown grounds for a reversal.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

7

Roger L. Lund, Judge

Superior Court County of Ventura

_____

Laurie A. Thower, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Corey J. Robins, Deputy Attorney General, for Plaintiff and Respondent.