Filed 11/5/25  P. v. Cabral CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084652 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD301812) |
| ABRAHAM GONZALEZ CABRAL, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on October 15, 2025, be modified.  On page 12, footnote 6 should be deleted in its entirety.

There is no change in the judgment.

IRION, Acting P. J.

Copies to:  All Parties

Filed 10/15/25  P. v. Cabral CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABRAHAM GONZALEZ CABRAL,<br><br>    Defendant and Appellant. | D084652<br><br><br>(Super. Ct. No. SCD301812) |


APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury found defendant Abraham Gonzalez Cabral guilty of one misdemeanor count of resisting arrest (Pen. Code,[1] § 148, subd. (a)(1)) and the trial court placed him on summary probation.[2]  On appeal, Cabral contends the trial court erred by denying his request for a pinpoint instruction on the First Amendment as a defense to the charge of resisting arrest.  Because we find Cabral's proposed pinpoint instruction unsupported by substantial evidence, confusing, and argumentative, we affirm the judgment.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

### 1. Prosecution Evidence

At about 6:20 a.m. on November 23, 2023 — Thanksgiving Day — uniformed San Diego Police Department (SDPD) Officer Thomas Pool observed a gold SUV run a stop sign at a downtown intersection.  The officer got in his marked patrol vehicle, followed the SUV, and activated his emergency lights to initiate a traffic stop.  The driver of the SUV, later identified as Cabral, pulled over.  The ensuing events were captured on several SDPD officers' body-worn cameras and the recordings were admitted as exhibits at trial.

Before Officer Pool could exit his police car, Cabral had already stepped out of the SUV.  Officer Pool testified this behavior is unusual and concerning

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     The jury found Cabral not guilty of felony possession of a billy club. (§ 22210.)  We discuss the facts pertaining to that charge only as they relate to the issues arising from the resisting arrest charge.

to police officers because traffic stops are "usually the most dangerous thing officers do." Cabral's hands were near his waistband and Officer Pool could not see Cabral's right hand. Against Officer Pool's commands, Cabral turned and faced the officer. Based on Cabral's unusual behavior and the uncertainty over whether there were weapons or other occupants in the SUV, Officer Pool got out of his vehicle, drew his handgun, pointed it at Cabral, and called for emergency backup. Officer Pool took cover behind his open vehicle door with his handgun pointed at Cabral while waiting for more officers to arrive to "deescalate the situation" and get Cabral "into custody peacefully." Numerous SDPD officers responded.

Officer Pool repeatedly ordered Cabral to get down on the ground but Cabral did not comply. Instead, Cabral got back in the driver's seat of his SUV despite Officer Pool telling Cabral to remain outside of it. Officer Pool then ordered Cabral to keep his hands outside the SUV but Cabral instead brought his hands inside. Cabral began playing music from his phone over the SUV's stereo system and turned the volume up loud, making it difficult to communicate. Cabral bounced one hand along to the music.

Cabral then got out of his SUV, closed the driver's door (which muffled the music), walked away from the officers, and loudly placed his hands on the SUV's hood. Officers had not instructed Cabral to do this and Officer Pool considered it "threatening" because the officers could not see what Cabral was doing with his hands. The officers repeatedly instructed Cabral to take two steps to the left but Cabral did not comply. Another officer instructed Cabral to "turn away," but Cabral instead turned to face the officers. Officer Pool testified that a suspect facing officers during an arrest poses a safety threat.

3

Officers again ordered Cabral to turn around but he did not comply. Officer Pool clarified, "Sir, face way. You're facing towards us. Turn around. Turn around." Cabral shouted, "What do you want, man? I gotta f---ing ham in the oven. [¶] It's Thanksgiving man. I've got a f---ing ham in the oven. [¶] What do you want?" Officer Pool responded, "You need to listen to us right now." Cabral shouted, "If you would have stopped me without f---ing screaming at me and without f---ing pointing s--t at me . . . . I would be compliant as hell." Officer Pool told Cabral, "We're not gonna argue about it." The officer directed Cabral to "turn away" and "get on the ground" on his stomach. Cabral briefly faced away from the officers, but then turned to face them, shouted his name, said he had identification, and made incoherent statements. The officers repeated for Cabral to get on his stomach but he did not comply. Officer Pool asked Cabral if anyone was in the SUV; Cabral turned to face the officers, gesticulated with his arms, and said he was alone. Cabral then faced away from the officers again.

Without being told to, Cabral dropped to the ground on his stomach. Officers did not approach Cabral to detain him at this point because he was next to his SUV and officers were uncertain whether it was occupied.

At the direction of a police officer, Cabral finally stood back up and began walking backward toward the officers. But Cabral then pivoted to face the officers and walked forward toward them, causing them to retreat for safety. Officers instructed Cabral to face away and resume walking backward toward them. Cabral initially complied, but then began walking sideways away from the officers, raising concerns he might try to escape. Officers repeatedly ordered Cabral to get on the ground but Cabral continued not to comply. As officers approached Cabral to take him into custody, Cabral physically resisted them.

4

The officers placed Cabral on the ground, where he continued to resist them and defied their commands to put his hands behind his back. One officer administered "open-palm strike[s]" to Cabral's back, but Cabral still did not comply. Officer Pool then delivered five blows to Cabral's abdomen, determined they were ineffective, and delivered five more. Another officer pepper-sprayed Cabral's face. While Cabral was struggling with the officers, they had the following exchange:

> CABRAL: (Unintelligible yelling.) So f--- you guys.
>
> POOL: Put your hands behind your back, dude. You're gonna get tased.
>
> CABRAL: I don't give a f---. You think I give a f--- about a f---ing — They're hitting me. They're hitting me.
>
> POOL: Put your hands behind your back.
>
> CABRAL: They're f---ing, socking my ribs. They're f---ing pepper spraying me and f---ing hitting me. F---ing p---ies.
>
> POOL: Put your f---ing hands behind your back.
>
> CABRAL: Yeah, that's right you f---ing p---ies. F---ing s---. You f---ing idiots. Bet you guys like f---ing playing like that, huh? [¶] . . . [¶] A f---ing stop sign. Over a f---ing stop sign. Over a f---ing stop sign. [¶] . . . [¶] Over a f---ing stop sign.

Officers eventually got Cabral's hands behind his back and handcuffed him. Officers found a knife in Cabral's pocket and a miniature baseball bat wedged between the driver's seat and front console of Cabral's SUV.

The prosecution introduced evidence regarding the SDPD's use-of-force matrix to show that the officers' actions toward Cabral were authorized at each stage of the escalating encounter.

5

## 2. Defense Evidence

Cabral testified in his own defense. He claimed he was unaware he was being pulled over and just happened to have parked when Officer Pool stopped. Cabral testified he requested that Officer Pool summon a supervisor and that he (Cabral) decided to wait in his SUV until the supervisor arrived. Cabral "pumped the music up" and was "dancing a little" because he "was excited." Cabral explained he tried to comply with the officers' commands but misunderstood or could not hear them, claiming it was loud downtown and he is "a little hard of hearing."

Cabral testified that when officers approached to detain him, he did not attempt to hit them or to escape. He "had no problems speaking with the officer" but "just didn't want to be in handcuffs." He testified he voluntarily went to the ground and "completely stopped moving" when officers told him to stop resisting. The defense presented photographs showing bruises Cabral sustained during the arrest.

## B. Procedural Background

The prosecution charged Cabral with one felony count of possession of a billy club (§ 22210) and one misdemeanor count of resisting arrest (§ 148, subd. (a)(1)). The jury found Cabral not guilty of the weapon-possession charge and guilty of resisting arrest. The trial court placed Cabral on summary probation.

## III. DISCUSSION

## A. Background

The People moved in limine to admit Cabral's statements made during his arrest, arguing they were "critical to understand his state of mind, demeanor, intent, motive, and knowledge."

6

Cabral moved in limine for a pinpoint instruction clarifying that, because the First Amendment affords "the freedom of individuals to verbally oppose or challenge police action without thereby risking arrest," the jury could not convict Cabral of resisting arrest based on his verbal opposition to the police. Cabral proposed the following instruction:

> There is no violation of Penal Code section 148 when a citizen verbally opposes or challenges police conduct because the citizen has not "resisted, delayed or obstructed" the police. Even fighting words, when uttered to a policeman, are constitutionally protected because it is not contemplated that a peace officer will react violently.
>
> Although section 148 proscribes resisting, delaying, or obstructing a police officer, "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free state from a police state. Even though the police may dislike being the object of abusive language, they are not allowed to use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the First Amendment. For this reason, section 148 must be applied with great care to speech.

At a pretrial hearing on motions in limine, the trial court announced its tentative ruling to deny Cabral's request. Defense counsel argued the instruction was necessary because the defense suspected — based on the People's motion in limine — that "the People will seek to use Mr. Cabral's freedom of speech . . . during that interaction with police to insist that he did delay, obstruct, or resist the police." The trial court denied Cabral's request, finding it premature and unnecessary in light of the applicable pattern instruction's "sufficien[cy] to cover the factual issues in this case."

7

At the jury instruction conference during trial, the defense renewed its request for the pinpoint instruction. The defense argued it was warranted based on the video footage and officers' testimony recounting Cabral's verbal opposition to the officers' conduct, and the defense's view that the officers considered Cabral's speech obstructive and warranting the use of additional force. The prosecutor responded that the instruction was not appropriate because he would "not be arguing or asking the jury to find Mr. Cabral guilty because he was verbally combative by itself. It's the refusing to comply with commands before force is used." The prosecutor further argued Cabral's "statements are probative of his state of mind." The trial court denied the defense's request to give its pinpoint instruction, finding the pattern jury instructions adequately cover the elements of, and defenses to, the resisting arrest charge and that "there does not appear to be substantial evidence to provide an additional pinpoint instruction."

The trial court instructed the jury with CALCRIM No. 2656 regarding the elements of resisting arrest. The instruction required the People to prove that (1) Officer Pool "was a peace officer lawfully performing . . . his duties"; (2) Cabral "willfully resisted, or obstructed, or delayed [Officer] Pool in the performance . . . of those duties"; and (3) when Cabral acted, he knew or reasonably should have known that Officer Pool was a peace officer performing his duties. This instruction also included the following unanimity component: "The People allege that the defendant resisted, or obstructed, or delayed [Officer] Pool by doing the following: ignoring lawful police commands, refusing lawful orders to place his arms behind his back, and pulling away from officers. You may not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least

8

one of the alleged acts . . . and you all agree on which act he committed." The court also gave a separate unanimity instruction (CALCRIM No. 3500).

The trial court instructed the jury with CALCRIM No. 2670 regarding the requirement that Officer Pool must be lawfully performing his duties at the time of the arrest. Among other things, this instruction advised that (1) "[a] peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention"; (2) "[s]pecial rules control the use of force"; (3) the jury "may not find the defendant guilty of resisting arrest if the arrest was unlawful"; and (4) "[i]f a peace officer uses unreasonable or excessive force while arresting or attempting to arrest or detaining or attempting to detain a person, that person may lawfully use reasonable force to defend himself or herself."

During closing arguments, the prosecutor and defense counsel each emphasized the importance of the jury agreeing unanimously that Cabral engaged in one or more of the predicate acts specified in CALCRIM No. 2656. Defense counsel also argued extensively that Cabral was not guilty because the officers acted unlawfully, thus justifying Cabral's reasonable resistance.

## B. Relevant Legal Principles

" 'Under appropriate circumstances, "a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case." ' " (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 220.) Pinpoint instructions " 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) "A defendant is entitled to a pinpoint instruction, upon request, only when appropriate." (*Ibid.*; *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 498 (*Mora and Rangel*) ["A *proper* pinpoint instruction must be given at

a defendant's request." (Italics added.)].) "[A] trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence." (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

The de novo standard of review applies to a trial court's refusal to give a requested pinpoint instruction on the basis it was unsupported by substantial evidence. (See *People v. Manriquez* (2005) 37 Cal.4th 547, 581.) The abuse of discretion standard applies to a trial court's refusal to give a requested pinpoint instruction on the basis it is duplicative, confusing, or argumentative. (See *Mora and Rangel, supra*, 5 Cal.5th at p. 497; *People v. Kraft* (2000) 23 Cal.4th 978, 1063.)

## C. Analysis

Based on our review of the entire record, we find no error in the trial court's refusal to give the requested pinpoint instruction.

To begin, the requested pinpoint instruction was not supported by substantial evidence. Based on the officers' testimony, their body-worn camera footage, Cabral's own testimony, and the jury instructions, no reasonable juror would construe the resisting arrest charge as being based on Cabral's speech rather than on his actions. The evidence shows Cabral repeatedly refused to comply with the officers' clear verbal commands and physically resisted when officers attempted to take him into custody. The trial court specifically instructed the jury that the resisting arrest charge was based on Cabral allegedly "doing" certain things: "ignoring lawful police commands, refusing lawful orders to place his arms behind his back, and pulling away from officers." None of these predicates involve Cabral's speech.

Cabral argues that certain of the prosecutor's statements during closing arguments suggested the charge was based on Cabral's speech rather

than his actions. For example, Cabral asserts "[t]he prosecutor incorrectly argued . . . that this statement alone made [Cabral] guilty: '[Mr. Cabral] doesn't remember saying "You f---ing p---ies" on the ground. Doesn't remember challenging them to fight. Why? Because those *statements*, that evidence makes him guilty.' " The record shows, however, that the prosecutor was not citing Cabral's statements as instances of resisting arrest, but rather, as bases for impeaching Cabral's credibility.

More specifically, the prosecutor made the cited statement while discussing CALCRIM No. 226, which sets forth factors the jury may consider when evaluating witness credibility. While discussing one of those factors — "Did other evidence prove or disprove any fact about which the witness testified?" (*ibid.*) — the prosecutor cited several instances in which other evidence disproved aspects of Cabral's testimony.[3] So framed, the reason Cabral's statements "ma[d]e him guilty" is because his dubious and self-serving claim to not remember making the statements impeached his credibility in all respects. The prosecutor also argued, more generally, that Cabral's statements were relevant to establishing the requirement that Cabral "*willfully* resisted, or obstructed, or delayed" a police officer.[4] (Italics

---

[3] For example, the prosecutor pointed out that while Cabral claimed he did not know the police had pulled him over, Cabral admitted at trial that he said " 'over a f---ing stop sign' " — before police told him why Officer Pool had stopped him.

[4] The prosecutor argued: "Statements can tell you what people are thinking. Right. It can reveal their intent. 'If you would have stopped me without f---ing screaming at me, without f---ing pointing s--- at me, I would be compliant as hell.' That's an admission he's not complying. He is telling the officer [']had you just done your job differently, I would have acted exactly as you're asking me to.['] [¶] Or how about this on direct: 'I didn't want to be in handcuffs.' He is telling you that he is taking these actions on purpose. Purposeful. No one is forcing him to act this way."

added.) The record, as a whole, shows that the prosecutor's argument about Cabral's statements "mak[ing] him guilty" did not suggest the statements could constitute a predicate for the resisting arrest charge.

Cabral also cites the prosecutor's references in closing arguments to Cabral "taunting" the officers, which he maintains suggested to jurors that they could find him guilty of resisting arrest based on his speech. Cabral first points to the following statement in the prosecutor's initial closing argument: " 'And the law tells you consider all the surrounding circumstances of this case . . . . That the defendant was quick to anger, demanded officers do their job a different way, yelling and cursing, challenging the officers, ignoring police commands and dancing, *taunting* with law enforcement who have guns drawn at them [sic], willing to physically resist police officers.' " But the record shows the prosecutor made this statement in connection with the weapon-possession charge (that is, whether Cabral possessed the miniature baseball bat "as a weapon").[5] Cabral obscured this fact in his appellate briefing by selectively quoting the passage above to omit the sentence that immediately follows it: "It's a weapon. Under these circumstances with this object, with this defendant, it's a weapon."[6] In context, then, it is clear that the prosecutor's initial reference to "taunting" was unrelated to the resisting arrest charge.

---

[5]    The trial court instructed the jury on the weapon-possession charge with CALCRIM No. 2500, which states in part: "To prove that the defendant is guilty of this crime, the People must prove that [¶] . . . [¶] [t]he defendant possessed the object as a weapon. [¶] . . . [¶] When deciding whether the defendant possessed the object as a *weapon*, consider all the surrounding circumstances relating to that question . . . ."

[6]    We remind Cabral's appellate counsel of his duty of candor to this court. (See Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Cond., rule 3.3(a).)

12

Cabral next points to the prosecutor's use of the word "taunting" twice in his rebuttal argument. At the very outset of his rebuttal, the prosecutor stated: "Six minutes [the approximate duration of the entire encounter] doesn't justify ten [blows]. What about [']six minutes doesn't justify countless ignored commands? Six minutes doesn't deserve taunting somebody who is doing their job. Six minutes doesn't deserve officers who are working on Thanksgiving having to put themselves in a dangerous situation . . . .['] [L]et me be very clear it is insulting the idea that Mr. Cabral gets to set the terms of how officers who are working safely do their job." This statement was a clear response to defense counsel's statement at the very outset of her closing argument that "six minutes did not justify 10 blows from Officer Pool." Defense counsel repeated the "six minutes" theme throughout her closing argument. The prosecutor's retort to the defense theme does not strike us as invoking "taunting" as a basis for convicting Cabral of resisting arrest.

At the very end of the prosecutor's rebuttal he again used the word "taunting." In surmising how jurors might describe this case when asked "What was the case about?", the prosecutor said:

> Are you going to say this is a case about a person who testified he didn't even know that he had been stopped, and he got the perfect [parking] spot and all of a sudden he saw this officer and he couldn't hear because downtown is so loud, and he was hard of hearing and he genuinely was trying to clarify with the officer what happened, and he just wanted to comply. And then these officers, like a group of bandits, came in and they just beat him up. Used excessive force.
>
> No. You're going to say this is about a person who was stopped on Thanksgiving. And maybe he was rightfully upset or frustrated for unfortunately running that stop sign right in front of a police officer, but then he took it out of hand. He was intentionally ignoring commands, he was

13

taunting officers. And the officers in that situation couldn't walk away from the scene. And eventually due to him not listening to commands, they had to use force. And then when they went into his vehicle, they found a weapon. That was illegal because of the way he was possessing it.

As the full context shows, the prosecutor cited Cabral's "not listening to commands" — not taunting — as the impetus for the officers' use of force. And as already noted, the prosecutor had earlier linked taunting to the weapon-possession charge and Cabral's mental state. We therefore conclude this limited reference to "taunting" lacks a nexus to the resisting arrest charge sufficient to require the trial court to instruct regarding First Amendment principles.

Finally, the timing of Cabral's statements also undermines the sufficiency of the evidence supporting the proposed pinpoint instruction. The vast majority of Cabral's taunting occurred after the officers were already attempting to subdue him, thus refuting that the taunting was the impetus for his arrest or prosecution.

We thus conclude — as the trial court did — that substantial evidence did not support instructing regarding First Amendment principles.

We likewise conclude the trial court properly refused to give Cabral's proposed pinpoint instruction because it was potentially confusing and argumentative. The first sentence of the proposed pinpoint instruction states: "There is no violation of Penal Code section 148 when a citizen verbally opposes or challenges police conduct because the citizen has not 'resisted, delayed or obstructed' the police." As the People argue, this assertion is confusing because it gives the mistaken impression that verbally opposing police while physically resisting them "somehow immunizes a defendant from liability for" the physical resistance. It also glosses over the

14

nuances between protected speech and criminal misconduct.  (See, e.g., *In re Chase C.* (2015) 243 Cal.App.4th 107, 117 ["when a person's words go 'beyond verbal criticism, into the realm of interference with [an officer's performance of his or her] duty,' the First Amendment does not preclude criminal punishment"].)

The proposed instruction is also argumentative.  Its reference to the distinction between a "free nation and a police state" is inflammatory and unhelpful to the jury on the facts of this case.  We recognize that this language comes from *Houston v. Hill* (1987) 482 U.S. 451, on which Cabral heavily relies.  (See *id.* at pp. 462–463 ["The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."].)  Cabral fails, however, to explain how the specific issue in *Hill* (the *legal* question of "whether a municipal ordinance that makes it unlawful to interrupt a police officer in the performance of his or her duties is unconstitutionally overbroad under the First Amendment" (*id.* at p. 453)) relates to the specific issue he wished to address here through the pinpoint instruction (whether Cabral's prosecution was premised on his speech rather than his conduct).  Absent such an explanation, Cabral's reliance on a snippet from another appellate case is unenlightening.  (See *People v. Colantuono* (1994) 7 Cal.4th 206, 221, fn. 13 ["The discussion in an appellate decision is directed to the issue presented.  The reviewing court generally does not contemplate a subsequent transmutation of its words into jury instructions and hence does not choose them with that end in mind.  We therefore strongly caution that when evaluating special instructions, trial courts carefully consider whether such derivative application is consistent with their original usage."]; *People v. Adams* (1987) 196 Cal.App.3d 201, 204–205

15

["Language in an appellate court opinion which may be a good statement of law or of the reasoning of the appellate court does not necessarily make a good jury instruction."].)

We also note that the second paragraph of Cabral's proposed pinpoint instruction is a nearly verbatim excerpt from *In re Muhammed C.* (2002) 95 Cal.App.4th 1325 at pages 1330–1331. Cabral does not discuss *Muhammed* at all in his briefing. Rather, he cites it only indirectly in a page-long block-quotation from an inapposite federal appellate decision in a civil action for unlawful arrest that held there were triable issues of fact as to whether officers were acting lawfully at the time of an arrest for purposes of qualified immunity. (*Johnson v. Bay Area Rapid Transit Dist.* (9th Cir. 2013) 724 F.3d 1159, 1174.)

In short, the trial court did not err by refusing to instruct the jury with Cabral's proposed pinpoint instruction regarding First Amendment principles.

## IV. DISPOSITION

The judgment is affirmed.

16

                                                                    RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.

17